STEVEN P. BARRENECHEA *v.* MICHAEL S. LAMONICA
(14986)

Dupont, C. J., and Landau and Spear, Js.

Argued November 13, 1996—officially released March 4, 1997

*Ben A. Solnit,* with whom, on the brief, was *Richard W. Bowerman,* for the appellant (plaintiff).

*Brendan T. Flynn*, with whom, on the brief, was *Robert L. Hirtle*, for the appellee (defendant).

LANDAU, J. In this chiropractic malpractice action, the plaintiff, Steven P. Barrenechea, appeals from the judgment, rendered after a jury trial, for the defendant, Michael S. LaMonica. On appeal, the plaintiff claims that the trial court should have granted his motion to set aside the verdict and to order a new trial because the court improperly (1) failed to instruct the jury on his preexisting neck condition and (2) charged the jury on proximate cause and inferences that it could draw, and failed to charge on the law applicable to out-of-state expert witnesses. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In January, 1989, the plaintiff visited the defendant, complaining of lower back and neck pain. He reported that the lower back pain had existed for a few weeks, and the neck pain had existed for approximately six months. After examining the plaintiff and taking two X rays, which showed degenerative changes in the plaintiff's C-5 and C-6 intervertebral disc space, the defendant diagnosed the plaintiff's condition as a disc compression or subluxation of the cervical spine, outlined a course of treatment and proceeded to treat him. In late March, after a lack of improvement and further X rays, the defendant recommended that the plaintiff submit to magnetic resonance imaging (MRI), but the plaintiff declined and continued treatment. On May 4, 1989, the plaintiff finally underwent an MRI, which revealed a herniated disc. Thereafter, the defendant advised the plaintiff to see a neurologist and the plaintiff refused. On June 14 and June 26, 1989, the defendant urged the plaintiff to consult with a neurosurgeon. In late June, the plaintiff saw a neurologist. Following another MRI, the plaintiff was admitted to a hospital on July 11, 1989, where Gerard A. Sava, a neurosurgeon,

removed a ruptured disc and fused the space between the C-5 and C-6 vertebrae with a bone graft. Although the operation was successful, the plaintiff was left with a permanent partial disability of his cervical spine.

In his complaint, the plaintiff alleged that the defendant (1) failed to evaluate the plaintiff's condition properly, (2) failed to obtain the plaintiff's informed consent before commencing treatment by failing to disclose adequately the nature, risks and hazards, alternatives and anticipated benefits of chiropractic treatment, and (3) improperly continued to manipulate the plaintiff's neck, despite the development of severe neck pain. The defendant denied the allegations of malpractice in the complaint and raised the special defenses of contributory negligence and failure to mitigate damages, asserting that the plaintiff failed to follow the defendant's recommendation that he undergo an MRI and ignored the defendant's instructions to see a physician about his neck condition.

The jury returned a verdict for the defendant. Its interrogatory responses reveal that it found that the defendant did not breach the standard of care for chiropractic physicians in his evaluation of the plaintiff's initial symptoms before commencing treatment or in obtaining informed consent before commencing treatment, but that he did breach the chiropractic standard of care by persisting in the manipulation of the plaintiff's neck despite the development of severe pain. It further found, however, that this breach of the standard of care was not a proximate cause of the plaintiff's injuries. In addition, the jury found that the plaintiff failed to follow the defendant's instructions to have an MRI performed in a timely fashion and that that failure constituted contributory negligence, but that the contributory negligence was not a proximate cause of his injuries. The jury also found that the plaintiff did not fail to mitigate his damages by not following the defendant's instruc-

tions to have an MRI performed or to consult with a neurologist in a timely fashion.

## I

The plaintiff first claims that the trial court improperly refused to charge the jury regarding his preexisting neck condition. The plaintiff contends that the requested instruction relates to issues of liability and damages. He requested that the trial court instruct the jury that they must consider that the "plaintiff is entitled to recover full compensation for all damages proximately resulting from the defendant's negligence even though his injuries might be more serious than they would otherwise have been, because of the preexisting physical condition of the plaintiff. . . . [T]he defendant takes the plaintiff as he finds him." He argues that there was ample evidence that entitled him to that charge. When the defendant commenced treatment, the plaintiff had been experiencing neck pain for approximately six months. In addition, the defendant testified that he believed the X rays taken on the intake day showed degeneration of the disc in the neck and the defendant's expert witness, Lewis R. Labbadia, a chiropractor, agreed. Sava testified that when he first examined the plaintiff, he exhibited symptoms of early degenerative changes in the disc.

The defendant argues that the requested charge goes solely to the issue of damages and, because the jury found that the defendant's actions were not the proximate cause of the plaintiff's injuries, the jury did not reach the issue of damages. The defendant further argues that the plaintiff was not entitled to that charge because he did not plead an aggravation of a preexisting condition as one of his injuries and, finally, that the requested charge is incorrect as a matter of law.[1]

---

[1] The plaintiff requested the following charge: "The plaintiff is entitled to recover *full* compensation for all damages proximately resulting from the defendant's negligence even though his injuries might be more serious than

"To comply with our rules, a request to charge must be relevant to the evidence and issues presented in court. *State* v. *Falcone*, 191 Conn. 12, 26, 463 A.2d 558 (1983). The trial court should instruct the jury on only those issues that are relevant to the facts in issue. *State* v. *Santangelo*, 205 Conn. 578, 599, 534 A.2d 1175 (1987); *Bonner* v. *Winter*, 175 Conn. 41, 48, 392 A.2d 436 (1978)." *Felsted* v. *Kimberly Auto Services, Inc.*, 25 Conn. App. 665, 672, 596 A.2d 14, cert. denied, 220 Conn. 922, 597 A.2d 342 (1991).

The plaintiff argues for the first time on appeal that the requested instruction relates to issues of liability and damages. The plaintiff contends that the issue of whether he suffered from a preexisting condition was "inextricably intertwined" with the issue of proximate cause and he was, therefore, entitled to the requested charge. Our review of the requested charge indicates that it focuses on damages and not on liability as the plaintiff now claims. The charge refers to compensation for damages resulting from the defendant's alleged negligence, rather than liability for those damages. This is an important distinction because the jury did not reach the issue of damages. In response to the interrogatories, the jury found that the defendant's actions were not the proximate cause of the plaintiff's injuries. Thus, we conclude that the trial court properly refused to give the requested charge.

they would otherwise have been, because of the pre-existing physical condition of the plaintiff. If the wrongful acts of the defendant were a substantial factor in producing the plaintiff's condition, the plaintiff is entitled to recover full damages for the disability so caused. This is so even though his injuries and the effects thereof are more serious and will be more prolonged than they otherwise would have been, because of his pre-existing health condition. In other words, 'the defendant takes the plaintiff as he finds him.' If you find that Dr. LaMonica was negligent and his negligence was a substantial factor in causing Mr. Barrenechea's disability, Dr. LaMonica cannot excuse his actions because [of] Mr. Barrenechea's pre-existing neck condition. [D.] Wright & [W.] Ankerman, Connecticut Jury Instructions (4th Ed.), § 235." (Emphasis in original.)

This conclusion, however, does not end our analysis. The thrust of the plaintiff's claim is that the trial court improperly charged the jury on the issue of proximate cause and, more specifically, should have charged on the effect a preexisting condition has on the determination of whether proximate cause exists. The plaintiff did request a charge on proximate cause, but the charge made no reference to a preexisting condition.[2]

Although this claim was not preserved at trial, we address this issue to determine whether plain error exists. This court "may in the interest of justice notice plain error not brought to the attention of the trial court." Practice Book § 4061. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . An important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice." (Internal quotation marks omitted.) *DiNapoli* v. *Cooke*, 43 Conn. App. 419, 426, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996), quoting *State* v. *Knight*, 29 Conn. App. 675, 676–77, 617 A.2d 913 (1992). Our review of the record reveals that the plaintiff did not seek a charge on aggra-

[2] The plaintiff requested the following charge: "If you find that Dr. LaMonica violated the standard of ordinary and reasonable care in one or more respects as alleged in the complaint and that this violation or these violations were a substantial factor in causing injuries to Steven Barrenechea, then your verdict must be for the plaintiff. The plaintiff does not have to prove the causal relationship with 100 percent certainty or that defendant's negligence was the only cause of his injuries. The plaintiff only has to prove the allegations by a preponderance of the evidence, or in other words, the better or weightier evidence and only has to prove that defendant's negligence was *a* substantial factor in injuring him. The plaintiff does not have to exclude or explain every other possible hypothesis. Proof of causation by the plaintiff need not be conclusive; it is sufficient if the plaintiff proves that it is more likely than not that his injuries resulted from the defendant's negligence." (Emphasis in original.)

vation of a preexisting injury, and that, even if the plaintiff's complaint is read to include an allegation that the defendant's negligence consisted of such an aggravation, the evidence was insufficient for the jury to conclude that such negligence was the proximate cause of the plaintiff's injuries. In fact, the jury found it was not. Thus, the trial court's charge did not result in an unreliable verdict or a miscarriage of justice. Accordingly, we conclude that the trial court did not commit plain error.[3]

## II

The plaintiff's remaining claims are all directed to the alleged failure of the trial court to charge the jury properly. The plaintiff claims that the trial court inadequately charged the jury on the issue of proximate cause, that the trial court's charge on inferences was erroneous, and that the trial court failed to charge on the law applicable to out-of-state expert witnesses.

"In reviewing a challenge to jury instructions, we must examine the charge in its entirety. *State* v. *Grullon*, 212 Conn. 195, 204, 562 A.2d 481 (1989). While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Felsted* v. *Kimberly Auto Services, Inc.*, supra, 25 Conn. App. 668. "The court is under no duty at any time to charge in the exact language requested. . . . Failure to charge precisely as proposed by a [party] is not error where the point is fairly covered in the charge." (Citations omitted.) *Tomczuk* v. *Alvarez*, 184 Conn. 182, 190, 439 A.2d 935 (1981). The trial court's instructions on proximate cause and the jury's ability to draw inferences from the evidence

---

[3] As a result of the foregoing, we do not reach the defendant's claims that the plaintiff failed to plead an aggravation of a preexisting condition and that the requested charge was incorrect as a matter of law.

were fully consistent with the applicable principles of law and fairly presented the issues to the jury.

The plaintiff's final instructional claim concerns defense counsel's closing argument.[4] He asserts that because defense counsel improperly attacked plaintiff's chiropractic expert's credibility, he was entitled to his requested charge concerning out-of-state expert witnesses. We are unpersuaded.

The trial court expressly cautioned the jury that arguments of counsel were not evidence and that they were to be guided by their own recollection of the facts.[5] In addition, when instructing the jury on expert witnesses, the trial court spoke of the experts collectively, treated them equally and drew no distinctions between them. The trial court concluded by emphasizing that it was up to the jury, and to no one else, to decide how much weight to accord each witness' testimony. The plaintiff's argument that defense counsel's comments in closing argument somehow placed in the jurors' minds a notion that they could discount the out-of-state expert's Holland's testimony on standard of care and causation because he came from Caseyville, Illinois, has no basis or foundation in the record. We conclude that the trial court properly instructed the jury.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The plaintiff's expert witness, Wilbur Holland, a chiropractor who testified as to both standard of care and causation, was from Illinois. Conversely, the defendant's expert witness practices in Middletown. In defense counsel's closing argument, he said, "[Wilbur Holland] comes from a place called Caseyville, Illinois, which honestly, I never heard of. . . . I don't know what the standard of medicine is in Caseyville, Illinois, and I don't know what Dr. Holland does in his practice. . . . I think he was a nice fellow, nice sort of country chiropractor, but I don't think he added to our store of knowledge here at all. He couldn't tell you what the standard of care was."

[5] The trial court instructed the jury as follows: "[T]he remarks of counsel in closing arguments do not constitute evidence. If in those remarks counsel stated any facts which do not comport with your recollection of the facts, you should be governed by your own recollection."