## STATE OF CONNECTICUT *v.* BUCKLEY OTTO
### (AC 16180)

O'Connell, C. J., and Schaller and Sullivan, Js.

1

Argued May 28—officially released August 25, 1998

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Michael E. O'Hare*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl Taylor*, assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3),[1] interference with a police officer in violation of General Statutes § 53a-167a,[2] attempted possession of narcotics within 1500 feet of a school in violation of General Statutes §§ 53a-49 (a) (2) and 21a-279 (d),[3] and attempted possession of narcotics in violation of General Statutes §§ 53a-49 (a) (2) and 21a-279 (a).[4] On

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[2] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

[3] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 21a-279 (d) provides: "Any person who violates subsection (a), (b) or (c) of this section in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school or a licensed child day care center, as defined in section 19a-77, that is identified as a child day care center by a sign posted in a conspicuous place shall be imprisoned for a term of two years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of subsection (a), (b) or (c) of this section."

[4] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned

appeal, the defendant claims that the trial court improperly (1) excluded evidence that two prosecution witnesses had settled personal injury claims with the defendant, (2) instructed the jury on first degree assault, (3) instructed the jury on the narcotics possession charges, (4) concluded as a matter of law that sufficient evidence existed to support the conviction of first degree assault and (5) violated the defendant's constitutional protection against double jeopardy by allowing both of the narcotics convictions to stand. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. This case arises out of a reverse sting operation that the Hartford police department conducted on January 14, 1995, at the Bellevue Square housing project in Hartford.[5] Officer Reginald Allen posed as a drug dealer while Officers Mark Castagna and David Kardys awaited Allen's signal in a nearby building. Lieutenant Michael Fallon watched the scene from a van on the same street.

At approximately 11:32 a.m., the defendant and a female companion approached Allen in a Chrysler New Yorker automobile. The defendant asked Allen if he "had anything" and said that he wanted heroin. After speaking to his passenger, the defendant told Allen that he wanted five bags of heroin. The defendant had money in his hand.

At that point, Allen signaled the other officers and identified himself to the defendant as a police officer. The defendant said, "Oh, shit," and the passenger said, "Go, go, go." The defendant then sped down the street.

not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[5] In a reverse sting, undercover police officers target purchasers of drugs by posing as sellers.

Castagna and Kardys appeared, identified themselves as police officers and ordered the defendant to stop. Both officers were wearing clothing clearly identifying them as police officers.[6] Castagna drew his gun as he ordered the car to stop. The defendant veered his car onto the sidewalk, hitting Castagna and Kardys.

As the defendant continued down the street, Fallon blocked the defendant's car with his vehicle. Kardys, Allen and Fallon surrounded the car, identified themselves as police officers, and ordered the defendant to shut off the engine and get out of the car. When the defendant did not comply, the officers forcibly removed the defendant from the car and arrested him. The officers then arrested the defendant's companion.

A jury convicted the defendant of first degree assault, interfering with a police officer, attempted possession of narcotics, and attempted possession of narcotics within 1500 feet of a school. This appeal followed.

I

The defendant first claims that the trial court improperly excluded as irrelevant the cross-examinations of Castagna and Kardys on their settlements with the defendant's insurance company and improperly excluded extrinsic evidence of those settlements offered to impeach the witnesses' credibility. The defendant argues that this ruling violated his constitutional rights to confrontation and to due process. Because the settlements of the injury claims are not relevant to the officers' credibility, this court finds no impropriety in the trial court's ruling.

The right to confrontation, which includes the right to cross-examine adverse witnesses, is guaranteed by

---

[6] Kardys wore a blue jacket with a badge insignia on the front breast and the words "Crime Suppression" on the back. Castagna wore a blue jersey with a golden badge insignia and the words "Hartford Police" on the front.

the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution, but it is not an absolute and unbounded right. *State* v. *Thompson*, 191 Conn. 146, 148, 463 A.2d 611 (1983). A court may, in the exercise of its discretion, limit the extent of cross-examination, especially with respect to credibility. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.4.3, pp. 43–44. We traditionally apply a two part analysis to determine whether a party has been deprived of effective cross-examination. "First, we determine whether the defendant received the minimum opportunity for cross-examination of adverse witnesses required by the constitution. . . . If so, we then consider whether the trial court's restriction of cross-examination amounted to an abuse of discretion under the rules of evidence. . . . To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon the cross-examination were clearly prejudicial. . . . If, however, the defendant is denied the right of effective cross-examination, there would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." (Citations omitted; internal quotation marks omitted.) *State* v. *Plaskonka*, 22 Conn. App. 207, 214, 577 A.2d 729, cert. denied, 216 Conn. 812, 580 A.2d 65 (1990).

As to the first part, the defendant does not assert that he was denied the minimum opportunity for cross-examining the witnesses. Although the defendant largely limited his cross-examination of Castagna to the settlement issue, the defendant cross-examined Kardys more widely with no restriction from the court except as to the settlement issue.

Contrary to the defendant's assertions, the trial court's decision did not unduly restrict the defendant's questioning so as to violate his right effectively to cross-examine the witnesses against him or to present a defense. Effective cross-examination does not include

eliciting or presenting evidence that is immaterial or irrelevant. See *State* v. *Barnes*, 232 Conn. 740, 746, 657 A.2d 611 (1995). When the trial court properly excludes evidence as irrelevant, it does not abuse its discretion in limiting cross-examination as to the excluded evidence. See *State* v. *Barrett*, 43 Conn. App. 667, 676–77, 685 A.2d 677 (1996), cert. denied, 240 Conn. 923, 692 A.2d 819 (1997).

On cross-examination, Castagna testified that the defendant intentionally hit him with his car. Prior to his court appearance, Castagna had settled a personal injury claim with the defendant's insurer pursuant to a policy that excludes intentional torts from its coverage. At trial, the defendant asserted that the settlement constituted conduct equivalent to a prior inconsistent statement and sought to impeach Castagna by eliciting testimony and introducing extrinsic evidence in the form of a signed general release of liability. The defendant also wanted to introduce similar evidence with respect to Kardys. The trial court limited the cross-examination about the settlement and excluded the extrinsic evidence.[7]

---

[7] The exchange at trial was as follows:

"[Defense Counsel]: Your Honor, [he has] received a settlement for personal injuries for an accident or occurrence. Now that [he has] testified that this is an intentional act, that he was run down, I think I should be allowed to ascertain if in fact he signed a release. I don't know about the money. It's not necessary for me to get the amount of the money in the settlement, but I think I should be allowed to ask him if he didn't sign a piece of paper or release involving this case in which he signed a paper for an accident or occurrence. It's a tacit admission, Your Honor, is what it is.

"The Court: Admission of what?

"[Defense Counsel]: It's a tacit admission of what he's testifying here today, that he was assaulted, that there's other indicia that he's received money for negligence.

"[Assistant State's Attorney]: I would object, Your Honor. First of all, I do not believe that what counsel's talking about constitutes an admission. Number two, I do not think that's relevant.

"[Defense Counsel]: Well, Your Honor, I've looked at [rule] 408 of the federal rules [of evidence]. Obviously, offers of settlement or compromise are not allowable. However, to show bias, prejudice—

The trial court's ruling was proper because the settlement evidence was not relevant to impeach Castagna and Kardys. A defendant may introduce prior inconsistent statements to impeach a witness. *State* v. *Keating*, 151 Conn. 592, 597, 200 A.2d 724 (1964), cert. denied sub nom. *Joseph* v. *Connecticut*, 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 (1965); C. Tait & J. LaPlante, supra, § 7.24.3, p. 207. The trial court must determine, however, whether the statement or conduct is, in fact, sufficiently contrary to the position asserted at trial to justify its introduction as a prior inconsistent statement. *State* v. *Piskorski*, 177 Conn. 677, 710, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

The relevancy issue, therefore, hinges on whether the mere settlement of a potential tort claim permits

---

"The Court: How would the fact that [he has] already had his settlement show bias and prejudice? . . . [He has] already participated, received—you think that because [he has] received it, it's an ongoing prejudice?

"[Defense Counsel]: Your Honor, when the defendant was charged with assault, an intentional act, this witness made claims under negligence.

"The Court: So?

"[Defense Counsel]: So, they're in contrast, Your Honor.

"The Court: Contrast to what?

"[Defense Counsel]: He's saying this is an intentional act, Your Honor. His testimony, Your Honor, since it's cross-examination I should be allowed to impeach him. How far that impeachment goes—I would agree that I don't think I should be able to put in the amounts.

"The Court: And I'll listen to the state's position. But you can ask him if [he has] been involved in an insurance settlement over this matter. If the answer's yes, you're out of there.

"[Defense Counsel]: I'd like to ask the words on the release, Your Honor. That is, for an accident or occurrence that he signed off on. I don't necessarily need the money, because I don't think that's relevant.

"[Assistant State's Attorney]: I would object. I believe the only relevant thing that counsel can ask is did you make a claim and was there a settlement of that claim.

"The Court: That's exactly right. And that's all I'm going to allow you . . . . You can have an exception. Did you make a claim and was there a settlement offer? As far as—you know one of the points on the record . . . is this officer does not have any control over which statute the state prosecution brings. . . . So, I'll restrict the questions to did you file a claim in this particular matter and was that matter settled."

the imputation to a settling party of a position sufficient to constitute an inconsistent statement. Specifically, the defendant argues that by settling civil claims where intentionality would bar recovery, Castagna and Kardys essentially admitted that the defendant did not act intentionally. We do not agree.

Signing a general release of liability does not necessarily constitute an assertion of any particular theory of liability. That the insurer settled the claims on a negligence basis does not necessarily lead to the conclusion that this representation was made to the insurer or that the witnesses' counsel in those matters did not present alternate theories. A prior inconsistent statement must be "sufficiently inconsistent." Id., 711. On the basis of the facts and assertions in the record here, we cannot find that the trial court abused its discretion in excluding this evidence.

Moreover, the settlement does not serve as an indicia of financial incentive, motive or bias. Neither Castagna nor Kardys had any personal interest in the outcome of the criminal trial. Although a pending claim or civil suit by one of the witnesses might suggest evidence of bias or interest because the outcome of the criminal trial would bear directly on the success of the civil action, there was no such pending action here.

We do not go so far as to say that representations made in a settlement or complaint will never constitute statements or admissions. In this case, however, they do not and, thus, we conclude that the trial court properly excluded the settlement evidence.

II

The defendant next claims that the trial court improperly instructed the jury with respect to the first degree assault charge. Specifically, the defendant claims that

the trial court failed to comment on the evidence and inadequately defined "substantial and unjustifiable risk" when instructing on reckless assault in the first degree. See General Statutes § 53a-3 (13). We address these two claims separately.

A

We first note that at the conclusion of the trial court's instructions to the jury, the defendant requested that the trial court amend its instructions to define "substantial and unjustifiable risk." When the trial court declined his request, the defendant excepted to the instructions. This portion of the defendant's second claim, therefore, was properly preserved for appeal. We disagree, however, that the trial court's instructions on reckless assault in the first degree were inadequate.

The standard of review of jury instructions is well established. "A charge to the jury is not to be critically dissected nor are individual instructions to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) *State* v. *Taylor*, 196 Conn. 225, 231, 492 A.2d 155 (1985). "In reviewing a challenge to jury instructions, we must examine the charge in its entirety. . . . While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury. . . . The court is under no duty at any time to charge in the exact language requested. . . . Failure to charge precisely as proposed by a [party] is not error where the point is fairly covered in the charge." (Citations omitted; internal quotation marks omitted.) *Barrenechea* v. *Lamonica*, 44 Conn. App. 389, 395, 689 A.2d 1137 (1997).

Here, in its instructions on reckless assault in the first degree, the trial court explained the terms "recklessly" and "substantial and unjustifiable risk" to the jury as follows: "Now, second, the state must prove

beyond a reasonable doubt that under the circumstances as described, the defendant recklessly engaged in conduct that created a risk of death to another person. How does a person act recklessly? A person acts recklessly with respect to a result under circumstances described by the statute as defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur and that such circumstances exist. *The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.* The standard of conduct of a reasonable person in the same situation as the defendant is the doing of something that a reasonably prudent person would do under the circumstances or omitting to do what a reasonably prudent person would not do under the circumstances.

"Now, a gross deviation is a great or substantial deviation, not just a slight or moderate deviation. There must be a great or substantial indifference between, on the one hand, the defendant's conduct in disregarding a substantial and unjustifiable risk and, on the other hand, what a reasonable person would have done under the circumstances. Whether a risk is substantial and unjustifiable is a question of fact for you to determine under all the circumstances." (Emphasis added.)

Considering the trial court's instructions on reckless assault in the first degree as a whole, we do not believe that the jury could have been misled by the trial court's explanation of a "substantial and unjustifiable risk." We conclude that the trial court's instructions on this issue were proper.

## B

The defendant's claim regarding the trial court's failure to comment on the evidence during its charge to

the jury was not properly preserved at trial. He now seeks review under the standards of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

A constitutional claim not properly preserved for appeal may nonetheless be successful. Our Supreme Court has stated that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." Id., 239–40.

"In reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge as a whole presents the case to the jury so that no injustice will result. . . . We will reverse a conviction only if, in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict. . . . In assessing whether a jury reasonably could have been misled by the court's instructions . . . it is always proper to consider whether the issues in the case are complicated." (Citation omitted; internal quotation marks omitted.) *State* v. *Rose*, 41 Conn. App. 701, 713–14, 679 A.2d 19, cert. denied, 239 Conn. 906, 682 A.2d 1011 (1996).

In *State* v. *Lemoine*, 233 Conn. 502, 512, 659 A.2d 1194 (1995), our Supreme Court concluded that "review of or comment on the evidence is not constitutionally mandated where the trial court, in the exercise of its

sound discretion, determines that such commentary is not necessary and that the jury would be properly instructed and not misled in its absence." In reaching that conclusion, the Supreme Court noted that "[i]t has long been established that [i]n properly instructing the jury it may or may not be necessary for the court to recall the attention of the jury to the evidence and to the facts which the State and the accused respectively claim to have established, or to comment upon the evidence or express an opinion as to its weight, or as to what verdict would be proper if the jury should find certain facts to have been proved. The charge should be so framed that the jury may clearly understand the matters which are submitted to them. . . . It is within the province, and may be within the duty, of the trial judge to not only call attention to the evidence adduced, but to state to the jury in the charge his own opinion of the nature, bearing and force of such evidence. . . . *It is not necessarily error to omit all comment upon the bearing and weight of evidence*; and generally the extent to which the court should discuss the evidence in submitting a case to the jury is, so long as in criminal cases the jury [is] not directed how to find [its] verdict, within the discretion of the trial judge. . . . *State* v. *Long*, 72 Conn. 39, 43, 43 A. 493 (1899)." (Emphasis added; internal quotation marks omitted.) *State* v. *Lemoine*, supra, 510–11.

Here, as in *Lemoine*, the trial court, after the close of the evidence and final arguments of counsel, instructed the jury as to the law applicable to all of the charges against the defendant. The trial court then instructed the jury as to the elements the state must prove as to each of the crimes charged in the information in order to convict the defendant. The trial court's instructions specified the victims to which the various charges against the defendant applied, and the jury had the information during deliberations. Further, the issues

presented were narrow and uncomplicated, and the elements of the crimes with which the defendant was charged, the claims of the parties and the evidence presented were not difficult to understand.

Moreover, as in *Lemoine*, the final arguments of counsel thoroughly reviewed the testimony given by the witnesses. We conclude, on the basis of the foregoing, that it was not reasonably possible that the jury was misled by the trial court's instructions and that no injustice to the defendant resulted by reason of the court's instructions. See id., 516; see also *State* v. *Glover*, 40 Conn. App. 387, 393–94, 671 A.2d 384, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996). The defendant's claim fails to satisfy the third prong of *Golding*.

## III

The defendant next claims that the trial court's instruction on the narcotics charges was inadequate and misleading. Specifically, the defendant maintains that the jury instruction should have made clear that "possession," an essential element of the crime of attempted possession of narcotics, denotes "exclusive control and dominion." This claim was not raised at trial and was thus not properly preserved for appeal. The defendant now seeks review of it under the standards of *State* v. *Golding*, supra, 213 Conn. 239–40. We will review the defendant's claim as the record is adequate for review and the alleged violation is of constitutional magnitude involving the defendant's constitutional due process rights to proper jury instructions on the essential element of a crime. See *State* v. *Hinton*, 227 Conn. 301, 308, 630 A.2d 593 (1993). We conclude, however, that the defendant has failed to show that the alleged violation clearly exists and clearly deprived him of a fair trial.

This court has stated that "[a]s long as the jury charge provides the jury with a clear understanding of the

elements of the crime and guidance for proper determination of whether those elements were present, the charge is constitutionally adequate." *State* v. *Jenkins*, 40 Conn. App. 601, 607, 672 A.2d 969, cert. denied, 237 Conn. 918, 676 A.2d 1374 (1996). Here, the trial court's instruction to the jury on the charge of attempted possession of narcotics was almost four pages long. As to the essential element of possession, the trial court stated, "First, I will discuss the elements of the underlying crime of possession of narcotics. Now, under our statutes a person is charged with violating Connecticut General Statutes § 21a-279 (a), which, as it pertains to this case, provides as follows. Any person who possesses any quantity of any narcotic substance, except as authorized, shall be punished."

The defendant asserts that the trial court's failure to explain that possession indicates exclusive control or dominion rendered the jury instructions inadequate. Under the facts of this case, however, it was not necessary for the trial court to instruct on exclusive control and dominion. Exclusive control or dominion by a defendant becomes critical only where a defendant's mere presence near the contraband is the sole factor supporting an inference of possession. See *State* v. *Cruz*, 28 Conn. App. 575, 580, 611 A.2d 457 (1992). The defendant did not suggest at trial that he may have served as a mere conduit of the drugs to his companion. The state presented evidence to show that the defendant did attempt to possess the narcotics. The defense presented evidence intended to show that the defendant merely asked Allen for directions and fled when he thought he was being attacked by armed robbers. Given the evidence presented and the arguments made at trial, the jury had the choice of either concluding beyond a reasonable doubt that the defendant attempted to possess drugs or concluding that the state had not met its burden. The jury instructions made that clear.

Reading the instructions as a whole, we conclude that the jury was properly instructed on the crime of attempted possession of narcotics. See *State* v. *Jenkins*, supra, 40 Conn. App. 606. The defendant's claim, therefore, fails the third prong of *Golding*.

## IV

The defendant claims that the trial court improperly concluded that there was sufficient evidence to sustain a guilty verdict with respect to the charge of first degree assault. The defendant failed to preserve this claim properly at trial because he failed to make a motion for judgment of acquittal at the close of the evidence pursuant to Practice Book § 42-42, formerly § 885, or to claim that the evidence was insufficient in any way. We review this claim under *State* v. *Golding*, supra, 213 Conn. 233, because it is of constitutional magnitude alleging the violation of a fundamental right; see *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993); and the record is adequate to permit review.

Our Supreme Court has held that the mere possibility that a jury could have found otherwise is not ground for upsetting a verdict. A verdict must be sustained unless the jury could not have reasonably or logically inferred guilt beyond a reasonable doubt from the evidence presented at trial. *State* v. *Ford*, 230 Conn. 686, 692–93, 646 A.2d 147 (1994).

The review of a claim of insufficient evidence involves a two part analysis. In making the assessment, the court must first "construe the evidence in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Roy*, 38 Conn. App. 481, 488, 662 A.2d 799 (1995), cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996). Second, the court must determine "whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the

evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) Id.

The evidence presented by the state and accepted by the jury tended to show that the defendant sped rapidly down the street away from Allen, that he veered onto the sidewalk and struck Castagna and Kardys, and that he continued down the road until a police van blocked his path. Construing the evidence in the light most favorable to sustaining the verdict, we are satisfied that the jury reasonably could have concluded that the defendant "recklessly engage[d] in conduct [that created] a risk of death to another person, and thereby cause[d] serious physical injury to another person." General Statutes § 53a-59 (a) (3). The defendant's claim fails to satisfy the third prong of *Golding*.

V

The defendant's final claim, which was not preserved at trial, is that his convictions for both attempted possession of narcotics and attempted possession of narcotics within 1500 feet of a school violate the protections against double jeopardy provided under the state and federal constitutions. Because the record is adequate to review this alleged claim of error and the claim is of constitutional magnitude, we conclude that the first two prongs of *Golding* are met and that the claim is reviewable.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed.

2d 707 (1969); *State* v. *Lonergan*, 213 Conn. 74, 78, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial." (Internal quotation marks omitted.) *State* v. *Patrick*, 42 Conn. App. 640, 644, 681 A.2d 380 (1996).

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Greco*, 216 Conn. 282, 290–91, 579 A.2d 84 (1990).

In the present case, both charges undisputedly arise from the same act or transaction because "it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser." (Internal quotation marks omitted.) *State* v. *Morin*, 180 Conn. 599, 601, 430 A.2d 1297 (1980). Specifically, the defendant could not have been guilty of violating §§ 53a-49 (a) (2) and 21a-279 (d), attempted possession of narcotics within 1500 feet of a school, without having first committed the crime of attempted possession of narcotics as defined by §§ 53a-49 (a) (2) and 21-279 (a).

In analyzing whether two offenses constitute the same offense, the United States Supreme Court has stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether *each* provision requires proof of a fact which the other does not." (Emphasis added.) *Blockburger* v. *United States*, 284

U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). In the present case, the two offenses constitute the "same offense" under *Blockburger* analysis, because only *one* of the offenses requires proof of an additional fact that the other does not, that fact being that the defendant was within 1500 feet of a school when he attempted to sell narcotics. The analysis, however, does not end here.

"[T]he *Blockburger* test is not a conclusive presumption of law; *Garrett* v. *United States*, 471 U.S. 773, 779, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985); but is a rule of statutory construction and should not be controlling where there is a clear indication of contrary legislative intent. *Missouri* v. *Hunter*, 459 U.S. 359, 367, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). As a rule of statutory construction, the *Blockburger* test 'does no more than create a rebuttable presumption.' *State* v. *Delgado*, 19 Conn. App. 245, 251–52, 562 A.2d 539 (1989). The determinative question is whether the legislature intended the offenses to be separate. *State* v. *Smart*, 37 Conn. App. 360, 365, 656 A.2d 677 [cert. denied, 233 Conn. 914, 659 A.2d 187] (1995)." *State* v. *Braswell*, 42 Conn. App. 264, 269, 679 A.2d 407 (1996), appeal dismissed, 243 Conn. 248, 701 A.2d 1057 (1997).

"The United States Supreme Court has held that 'where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.' " *State* v. *Patrick*, supra, 42 Conn. App. 648. This court has concluded that legislative intent to authorize cumulative punishment is evidenced by "the language, structure and legislative history of a statute . . . ." (Internal quotation marks omitted.) Id., 647.

We conclude that the language of § 21a-279 (d) manifests the legislature's clear intent to impose cumulative punishment for violating § 21a-279 (a) within 1500 feet of a school. Section 21a-279 (d) provides that possession within 1500 feet of a school be punished by imprisonment "for a term of two years, which shall not be suspended and shall be *in addition and consecutive to any term of imprisonment imposed for violation of subsection (a), (b) or (c) of this section.*" (Emphasis added.)

The legislative history of § 21a-279 (d) demonstrates that in enacting § 21a-279 (d), the legislators intended to impose cumulative punishment.[8] During the Senate hearings on Public Acts 1989, No. 89-256, Senator John Atkin stated, "The previous law only required the extra sentence for the sale of and now we're adding possession. I think this will go a long way to keep these drugs away from our children." 32 S. Proc., Pt. 10, 1989 Sess., p. 3606. Representative Christel Truglia expressed similar sentiments in the General Assembly: "I rise in support of this bill to increase penalties for illegal sale or possession of drugs near school grounds. The drug problem is one of the most serious issues facing our cities, state and country. . . . The message here is that the state will not tolerate the corruption of our youth. Our criminal justice system's ability to fight the war on drugs is enhanced by this bill to a great extent." 32 H.R. Proc., Pt. 11, 1989 Sess., pp. 3863–64.

Because we conclude that the legislature intended and authorized cumulative punishments for violations

[8] Chief State's Attorney John Kelly, whose office submitted the original bill, also testified before the General Assembly's judiciary joint committee. He stated that the bill was designed to target "those people on the outside who deal drugs, possess drugs or paraphernalia . . . . The intent is to obviously hit hard at these outsiders . . . . These are going to be mandatory consecutive sentences and have an impact." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1989 Sess., pp. 1193–94.

of § 21a-279 (a) and (d), we hold that the defendant's convictions of both do not violate the prohibition against double jeopardy.

The judgment is affirmed.

In this opinion the other judges concurred.