COLLARD AND ROE, P.C. *v.* ARTHUR O. KLEIN ET AL.

CHARLES D. ROCKWELL ET AL. *v.* ARTHUR O. KLEIN ET AL.
(AC 24651)

Foti, DiPentima and Hennessy, Js.

Argued October 20, 2004—officially released February 8, 2005

*Arthur O. Klein,* pro se, the appellant (named defendant).

*Aimee J. Wood,* for the appellee (Collard & Roe, P.C.).

*Richard E. Castiglioni,* for the appellees (First American Title Insurance Company et al.).

*Opinion*

DiPENTIMA, J. The defendant Arthur O. Klein appeals from the judgments of the trial court rendered in a fraudulent conveyance action and an interpleader action. In the fraudulent conveyance action, the court rendered judgment in favor of the plaintiff, Collard & Roe, P.C. (Collard & Roe), a New York law firm, on both

the complaint and the counterclaim. In the interpleader action, the court ordered the disbursement of escrowed funds and discharged the plaintiff escrow agents, Charles D. Rockwell and Michael A. Laux, from liability. Arthur Klein raises a number of issues on appeal attacking these judgments. For the reasons set forth, the judgments of the trial court are affirmed.

These cases have a tortuous procedural and factual history that began with the short-lived merger of Collard & Roe and Klein & Vibber, P.C. (Klein & Vibber), a Connecticut law firm in which Arthur Klein was a partner. Following a dispute over the division of fees and profits, the merger dissolved, and Collard & Roe filed an action against Arthur Klein and Klein & Vibber in a New York court, claiming that they had misappropriated approximately $70,000. On February 28, 1997, after Arthur Klein and Klein & Vibber failed to appear for trial, Collard & Roe obtained a judgment against them in the amount of $97,921. On June 2, 1997, Collard & Roe domesticated the judgment in Connecticut pursuant to the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq.

On July 25, 1997, Arthur Klein transferred by quitclaim deed to his wife, Diane L. Klein, his interest in property located at 7 Half Mile Common in Westport. On February 12, 1998, he quitclaimed to his wife his one-half interest in property located at 391 North Main Street, Westport. Following these transfers, Arthur Klein was left with no other assets and was insolvent. Subsequently, Diane Klein sought to sell 391 North Main Street to Kirk Straight and Nicole J. Straight, third party buyers, but due to a judgment lien placed on the property by Collard & Roe, Diane Klein could not provide marketable title for the property. The Straights' title company, First American Title Insurance Company (First American), agreed to issue the title policy despite the lien, provided the Kleins indemnified First American

against loss, damages and attorney's fees, and placed $150,000 of the proceeds of the sale in escrow to secure the indemnification agreement. The Kleins also agreed to take immediate steps to remove the lien with the understanding that if they failed to do so, First American could demand that the escrow funds be paid to any claimant in order to release or to discharge the lien. In accordance with the indemnification and escrow agreement of November 16, 1998, $150,000 was placed in escrow with the Straights' attorney, Laux, and Diane Klein's attorney, Rockwell.

By complaint dated April 14, 1998, Collard & Roe commenced the action to set aside as fraudulent Arthur Klein's transfer of 7 Half Mile Common to his wife. By amended complaint dated February 4, 1999, Collard & Roe added a count claiming that Arthur Klein's transfer of his partial interest in 391 North Main Street was also fraudulent. On March 27, 1999, the Kleins, appearing pro se, filed an amended answer, asserting as a special defense that the underlying claim had been rendered invalid as a result of a proceeding against Arthur Klein before the statewide grievance committee, and filed a six count counterclaim alleging intentional infliction of emotional distress and seeking restitution for sums already collected by Collard & Roe. On December 6, 1999, the Kleins filed a request for a jury trial. Over the objections of the Kleins, the case was tried to an attorney trial referee who recommended that judgment be rendered in favor of Collard & Roe on the complaint and against the Kleins on the counterclaims. The court accepted the recommendations of the referee and judgment was rendered. The Kleins appealed from that judgment.

Meanwhile, by complaint dated February 8, 1999, Collard & Roe brought an action to foreclose its judgment lien on 391 North Main Street, which was then owned by the Straights. A judgment of strict foreclosure was

rendered on May 24, 1999.[1] Laux and Rockwell were requested to pay over the escrow funds to satisfy the lien. They did not do so and, in June, 1999, initiated an interpleader action and deposited the $150,000 escrow account with the clerk of the court. In that action, First American and the Straights sought indemnification, costs and attorney's fees. Collard & Roe claimed that it was entitled to the funds to satisfy its judgment lien. The Kleins claimed that the funds rightly belonged to them for a variety of reasons.[2] The court found against the Kleins and directed payment from the escrow funds to satisfy Collard & Roe's New York judgment. The Kleins appealed from that judgment.

The fraudulent conveyance and the interpleader actions were consolidated for the purpose of appeal. Although the Kleins raised a number of issues on appeal, this court addressed only one in *Collard & Roe, P.C.* v. *Klein*, 72 Conn. App. 683, 806 A.2d 580 (2002). We held that the Kleins had not consented to have the fraudulent transfer case heard by an attorney trial referee pursuant to Practice Book § 19-2A and remanded the cases for new trials. *Collard & Roe, P.C.* v. *Klein*, supra, 692.

On remand, notwithstanding the Kleins' renewed request for a jury trial, the consolidated cases were tried to the court. In a memorandum dated August 20, 2003, the court found in favor of Collard & Roe on all counts and directed that "the remaining balance of the

---

[1] The law days have been stayed.

[2] The Kleins asserted that (1) the New York judgment was a default judgment, (2) Arthur Klein was not the owner of 391 North Main Street when the judgment lien was recorded, and Diane Klein was not a party to the judgment, (3) they were fraudulently induced to sign the escrow agreement, (4) the statewide grievance committee had absolved Arthur Klein of liability to Collard & Roe, and (5) the escrow agreement was void in light of *Galvanek* v. *Skibitcky*, 55 Conn. App. 254, 738 A.2d 1150 (1999). The Kleins also claimed that the other claimants violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq.

$150,000 shall be paid over and used first to satisfy the Collard & Roe judgment, including interest on said sum and for any attorney's fees hereinafter approved by the court, and any remaining sums from the escrowed funds [are] to be used in satisfaction of fees and costs of First American Title Insurance Company." On September 17, 2003, the court issued a supplemental memorandum of decision in which it reiterated its finding in favor of Collard & Roe, discharged the escrow agents from any liabilities arising out of the interpleader action and directed payment from the escrow account in accordance with the judgment of August 20, 2003. This appeal followed.

On appeal, Arthur Klein claims that the court improperly (1) denied him and Diane Klein a jury trial, (2) gave full faith and credit to the New York judgment, (3) failed to consider the proceedings before the United States District Court for the District of Columbia, the statewide grievance committee and the United States Patent and Trademark Office, (4) denied the Kleins access to the Klein & Vibber bank account maintained by Collard & Roe, (5) determined that the quitclaim deed conveying 391 North Main Street was invalid, (6) determined that the escrow agreement between the Kleins and First American was valid and enforceable, (7) ignored what Arthur Klein deems to be the "controlling dicta" in *Collard & Roe, P.C.* v. *Klein,* supra, 72 Conn. App. 683, (8) denied the Kleins' request to amend their counterclaims in both the fraudulent transfer and interpleader actions, and (9) determined that First American and attorney Laux had not violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq.[3]

---

[3] Although this appeal was brought in the name of both Arthur Klein and Diane Klein, the appeal form is signed only by Arthur Klein as a pro se litigant, and therefore only he is a party to the appeal. Arthur Klein has been suspended from the practice of law in Connecticut. See *Statewide Grievance Committee* v. *Klein,* 86 Conn. App. 338, 862 A.2d 303 (2004). A

I

As a threshold matter, we address this court's jurisdiction over this appeal. Prior to oral argument, the parties were directed to address why this court should not dismiss for a lack of a final judgment that portion of the appeal challenging the trial court's judgments on the fraudulent conveyance and interpleader actions on the ground that the court did not specify the rate at which prejudgment interest should be calculated. See *Gianetti* v. *Meszoros*, 268 Conn. 424, 426, 844 A.2d 851 (2004) (when discretionary prejudgment interest awarded, but applicable rate of interest not established, there is no final judgment). "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal

pro se party may not appear on behalf of another pro se party. *Lowe* v. *Shelton*, 83 Conn. App. 750, 756, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). To do so would be to engage in the unauthorized practice of law. See General Statutes § 51-88.

A number of claims pertaining to Diane Klein are raised on appeal, namely, that the court improperly found that Collard & Roe had not intentionally inflicted emotional distress on her, that the escrow agents had not breached their duty to her, that she was not fraudulently induced to sign the escrow agreement, that First American and attorney Laux had not tortiously interfered with the contract between her and the Straights, and that First American and attorney Laux did not violate the unfair trade practices act and the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq. It is also claimed that the court improperly denied the motion to release to Diane Klein the $150,000 held by the clerk of the court in the interpleader action. Because Diane Klein is not properly a party to this appeal, we decline to review these claims.

Arthur Klein asserts for the first time in his reply brief that certain actions taken by First American and attorney Laux constituted fraudulent inducement. Because this claim was not raised until the reply brief, we will not address it. See *Feen* v. *New England Benefit Cos.*, 81 Conn. App. 772, 777, 841 A.2d 1193 (" '[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief' "), cert. denied, 269 Conn. 910, 852 A.2d 739 (2004).

quotation marks omitted.) *Sweeney* v. *Sweeney*, 271 Conn. 193, 207, 856 A.2d 997 (2004).

In its memorandum of decision, the trial court ordered that "the remaining balance of the $150,000 shall be paid over and used first to satisfy the Collard & Roe judgment, including interest on said sum," but failed to clarify whether the interest ordered was prejudgment or postjudgment and, if prejudgment, what rate of interest was to be applied. If the interest ordered was prejudgment, there is no final judgment under *Gianetti* v. *Meszoros*, supra, 268 Conn. 424; however, if it was postjudgment interest, there is a final judgment, and this court has jurisdiction to hear the appeal. See *Bower* v. *D'Onfro*, 45 Conn. App. 543, 696 A.2d 1285 (1997). Because we determine that the interest awarded was postjudgment, we conclude that there is a final judgment.

Pursuant to General Statutes § 52-605 (b), a foreign judgment is to be "treated in the same manner as a judgment of a court of this state. . . ." Therefore, any proceeding before our courts related to a properly domesticated final foreign judgment is treated as postjudgment in nature. *Harris* v. *Harris*, 14 Conn. App. 384, 386 n.2, 540 A.2d 1079 (1988). Accordingly, any interest ordered on a domesticated foreign judgment is postjudgment interest. Because the trial court ordered that interest be paid on Collard & Roe's domesticated New York judgment, the interest ordered was postjudgment. We now turn to the merits of Arthur Klein's appeal.

## II

Arthur Klein claims that he was improperly denied a jury trial. The right to a jury trial arises pursuant to General Statutes § 52-215, which provides that in civil actions presenting issues of fact other than those properly cognizable in equity, when the amount in contro-

versy exceeds $250, a request for a jury trial may be made by any party within ten days after an issue of fact is joined. A plaintiff's challenge to the conclusion of the trial court with regard to the interpretation of § 52-215 raises a question of law, over which we exercise plenary review. See *Fleet National Bank's Appeal from Probate*, 267 Conn. 229, 237, 837 A.2d 785 (2004).

In the fraudulent conveyance action, the Kleins requested a jury trial on December 6, 1999. The final pleading in that case was Collard & Roe's reply to the Kleins' special defense, filed June 23, 1999. Thus, the Kleins' request for a jury trial was made nearly six months after the last issue of fact in the action was joined, and well beyond the ten day statutory limit. Arthur Klein has not directed this court's attention to any new issue of fact joined subsequent to the remand and prior to the new trial. The court did not improperly deny Arthur Klein a jury trial as to the fraudulent conveyance action.

In the interpleader action, the Kleins requested a jury trial in a request for leave to amend their counterclaims and cross claims on March 3, 2003. The request for leave to amend was not granted. Therefore, the final pleading in that action was filed on January 20, 2000. The Kleins' request for a jury trial was made nearly three years after the final issue of fact in the action was joined, also well beyond the ten day statutory limit. Although Arthur Klein has raised numerous issues he believes present new facts, he has not directed our attention to any new issue of fact actually joined subsequent to January 20, 2000. The court did not improperly deny Arthur Klein a jury trial as to the interpleader action.[4]

---

[4] Our conclusion that Arthur Klein's requests for a jury trial in both the fraudulent conveyance action and the interpleader action were untimely under General Statutes § 52-215 should not be interpreted to mean that fraudulent conveyance and interpleader actions are not equitable actions within the terms of General Statutes § 52-215. See *Gaudio* v. *Gaudio*, 23

## III

Arthur Klein next claims that the court incorrectly gave full faith and credit to the New York judgment. He alleges in that regard that the judgment was rendered void by the Supreme Court of the state of New York, county of Nassau. He also argues that the trial court improperly failed to consider proceedings before the United States District Court for the District of Columbia, the statewide grievance committee and the United States Patent and Trademark Office. In addition, he asserts that Collard & Roe's refusal to release records pertaining to the Klein & Vibber bank account maintained by Collard & Roe demonstrates that the judgment is not valid. He further maintains that the court improperly denied him access to the records of the bank account. We disagree.

A foreign judgment is a final judgment of any court "entitled to full faith and credit in this state, except one obtained by default in appearance or by confession of judgment." General Statutes § 52-604. A foreign judgment may be domesticated pursuant to § 52-605 (a) by filing "a certified copy of [the] foreign judgment . . . in the court in which enforcement of such judgment is sought, a certification that the judgment was not obtained by default in appearance or by confession of judgment, that it is unsatisfied in whole or in part . . . and that the enforcement of [the] judgment has not been stayed . . . ." Such a domesticated foreign judgment is not subject to collateral attack absent allegations

Conn. App. 287, 301–302, 580 A.2d 1212 (whether fraudulent conveyance action is an equitable action depends to great extent on whether plaintiff is seeking damages or the setting aside of the conveyance), cert. denied, 217 Conn. 803, 584 A.2d 471 (1990); General Statutes § 52-484 ("[w]henever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint *in equity*, in the nature of a bill of interpleader") (Emphasis added.)

implicating lack of personal or subject matter jurisdiction. See *Nastro* v. *D'Onofrio*, 76 Conn. App. 814, 823–24, 822 A.2d 286 (2003). Whether the court properly applied the Uniform Enforcement of Foreign Judgments Act to the facts of this case gives rise to an issue of statutory construction over which our review is plenary. *Segal* v. *Segal*, 264 Conn. 498, 506, 823 A.2d 1208 (2003).

The New York judgment was a final judgment, not obtained by default of appearance or confession of judgment. Arthur Klein made an initial appearance in the case on behalf of himself and Klein & Vibber. Thereafter, he failed to appear for trial and a default judgment was entered against him. The judgment was therefore a default judgment, but not one of appearance. Collard & Roe properly certified a copy of the judgment with an affidavit to the Superior Court for the judicial district of Stamford-Norwalk, and the judgment accordingly was domesticated.

Arthur Klein argues that the default judgment was voided by the New York Supreme Court in July, 1995. Judgment in the New York case, however, was rendered on February 28, 1997. Arthur Klein fails to explain how the 1995 determination could have voided the judgment rendered one and one-half years later. As it is, the record supports the contrary conclusion, which is that the judgment is a valid final judgment, the enforcement of which has not been barred and which implicates neither personal nor subject matter jurisdiction.

Arthur Klein also argues that the court improperly disregarded the proceedings before the United States District Court for the District of Columbia, the statewide grievance committee and the United States Patent and Trademark Office. He fails to provide any reasoning as to how these cases implicate Connecticut jurisdiction over the New York judgment. The proceedings appear to relate to Arthur Klein's disbarment from the United

States patent bar, the New York bar and the Connecticut bar and, thus, bear no direct relationship to the New York judgment, which originated out of a dispute between Collard & Roe and Klein & Vibber regarding fee and profit sharing. As such, they implicate neither personal nor subject matter jurisdiction with regard to the New York judgment. They were, therefore, irrelevant to these cases, and the court correctly disregarded them. See *State* v. *Morgan*, 70 Conn. App. 255, 264, 797 A.2d 616 (court's right, duty to exclude irrelevant evidence), cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

Arthur Klein also claims that the failure to produce the Klein & Vibber bank account records undermines the New York judgment, but he again fails to show how it implicates subject matter or personal jurisdiction. Because the bank records were irrelevant in determining the validity of the domesticated judgment and its enforcement, the court did not abuse its discretion in denying the Kleins' discovery request regarding the account. See *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 7, 826 A.2d 1088 (2003) (standard of review for grant or denial of discovery request is abuse of discretion); *State* v. *Morgan*, supra, 70 Conn. App. 264.

The court correctly upheld the validity of the domesticated New York judgment and denied the Kleins' discovery request.

## IV

Arthur Klein claims that the court improperly determined that the quitclaim deed conveying full ownership of 391 North Main Street to his wife was invalid. The court found that the deed was defective in that it lacked the signature of two witnesses as required by General Statutes § 47-5. It is Arthur Klein's contention that General Statutes § 47-36aa cures any defect in the deed. We agree that the deed was invalid.

Section 47-36aa (a) provides in relevant part: "Any deed . . . conveying . . . any interest in real property in this state recorded after January 1, 1997, which instrument contains any one or more of the following defects or omissions is as valid as if it had been executed without the defect or omission unless an action challenging the validity of that instrument is commenced and a notice of lis pendens is recorded in the land records of the town or towns where the instrument is recorded within two years after the instrument is recorded . . . (2) The instrument is attested by one witness only or by no witnesses . . . ." Issues of statutory construction raise questions of law, over which we exercise plenary review. *Fleet National Bank's Appeal from Probate,* supra, 267 Conn. 237.

Arthur Klein attempted to quitclaim his share in 391 North Main Street on February 12, 1998, but failed to obtain the requisite signatures of two witnesses. Collard & Roe filed its judgment lien and lis pendens on March 12, 1998, and brought suit challenging the conveyance on April 14, 1998. Collard & Roe released its lis pendens on November 12, 1998, and filed a new lis pendens on January 20, 1999, naming the Straights as defendants. Collard & Roe filed a lis pendens and brought suit within the statutory period. That the lis pendens was removed before the resolution of the suit in no way changes this conclusion. "The sole purpose of the lis pendens . . . is to give constructive notice to persons who may subsequently acquire an interest in the property . . . ." (Internal quotation marks omitted.) *Ghent* v. *Meadowhaven Condominium, Inc.,* 77 Conn. App. 276, 284–85, 823 A.2d 355 (2003). The record makes clear that the Straights were well aware of the judgment lien on 391 North Main Street prior to their purchase. The court correctly determined that the invalidity of the deed was not cured by § 47-36aa.

## V

Arthur Klein claims that the court improperly determined that the escrow agreement between the Kleins and First American was valid and enforceable. We disagree.

Arthur Klein argues that the controlling dicta[5] of *Galvanek* v. *Skibitcky*, 55 Conn. App. 254, 738 A.2d 1150 (1999), governs the escrow agreement, not General Statutes § 51-81h. His claim raises an issue of law over which our review is plenary. See *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 688, 859 A.2d 533 (2004). Arthur Klein appears to argue that the escrow agreement is invalid because Diane Klein's and the Straights' attorneys acted as the escrow agents. Even if Arthur Klein is correct, and § 51-81h has not preempted *Galvanek* for the purpose of this case, his claim must fail.[6] In *Galvanek,* this court held that when escrow funds are retained by one party's attorney, no escrow agreement exists because the money remains, for all practical purposes, in the hands of one of the parties. *Galvanek* v. *Skibitcky,* supra, 257. Here, both attorneys acted as escrow agents and, therefore, the funds were not controlled by any one party. Arthur Klein seems to argue that Diane Klein's attorney effectively ceased working for her, but fails to explain how he comes to that conclusion. The court correctly found that the escrow agreement was valid.

## VI

Arthur Klein claims that the court ignored the "controlling dicta" in *Collard & Roe, P.C.* v. *Klein,* supra,

[5] Dicta is generally understood to be those parts of a judicial opinion that are nonbinding in subsequent cases as legal precedent. Our search of Connecticut precedent reveals no mention of "controlling dicta."

[6] General Statutes § 51-81h superseded *Galvanek* and applies to all "escrow agreements in existence on or after May 16, 2000, the effective date of the act." *Young* v. *Young,* 64 Conn. App. 651, 657 n.6, 781 A.2d 342, cert. denied, 258 Conn. 908, 782 A.2d 1255 (2001).

72 Conn. App. 683. Aside from this assertion in his preliminary designation of issues for appeal, he provides no analysis regarding this issue in his brief. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 676, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005). Accordingly, we decline to address this claim.

### VII

Arthur Klein claims that the court improperly denied the Kleins' request for leave to amend their counterclaims and cross claims in both the fraudulent transfer and interpleader actions. The Kleins filed a request for leave to amend their counterclaims and cross claims in the interpleader action on March 3, 2003. Objections to the request were filed on March 10, and 12, 2003. The request was denied on April 23, 2003. We could not find in the record any request for leave to amend filed in the fraudulent conveyance action. In addition, Arthur Klein has provided no record of any action he took in the trial court to have the court articulate its reason for denying his request for leave to amend. It is the appellant's duty to provide an adequate record for review. Practice Book § 61-10. Because we have no record of any request for leave to amend in the fraudulent conveyance action and no way of knowing why the court did not grant the Kleins' request for leave to amend their counterclaims and cross claims in the interpleader action, we will not review the claim. See *Vaillancourt* v. *Latifi*, 81 Conn. App. 541, 551, 840 A.2d 1209 (2004).

The judgments are affirmed and the cases are remanded for the purpose of setting a new law day.

In this opinion the other judges concurred.