******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHASE HOME FINANCE, LLC *v.* RICKY A.
MORNEAU ET AL.
(AC 36561)

Gruendel, Prescott and Borden, Js.

*Argued December 4, 2014—officially released March 24, 2015*

(Appeal from Superior Court, judicial district of
Middlesex, Aurigemma, J. [summary judgment];
Domnarski, J. [strict foreclosure].)

*John-Henry M. Steele*, for the appellant (defendant
Michel Gonzalez).

*Sean P. Clark*, for the appellee (substitute plaintiff).

*Opinion*

BORDEN, J. The defendant Michel Moran[1] appeals from a judgment of strict foreclosure rendered following the trial court's granting of summary judgment in favor of the substituted plaintiff, J.P. Morgan Chase Bank, N.A. (J.P. Morgan).[2] On appeal, Moran claims that the court improperly granted summary judgment because there is a genuine issue of material fact as to whether she held a valid one-half interest in the title of the property that is the subject of foreclosure. We affirm the judgment of the trial court.

This case addresses the question of whether J.P. Morgan, in foreclosing on a mortgage, can foreclose on the full title to a piece of property located at 399 Main Street in Portland (property). The title to the property at the time this action was commenced was held by Ricky A. Morneau. Moran claims that she has a validly recorded one-half interest in the property and, because Morneau had validly conveyed a one-half interest in the property to her, and because she did not sign the original mortgage deed, J.P. Morgan cannot foreclose upon the entire property.[3] J.P. Morgan claims, to the contrary, that Morneau did not validly convey title to one half of the property to Moran. Whether J.P. Morgan can foreclose on the entirety of the title to the property therefore depends upon whether the documents recorded on the land records and relied on by Moran as constituting a conveyance of a one-half interest in the property raised a question of fact as to whether they constitute a valid deed of one half of the title to the property.

The following facts are relevant to this appeal. On August 13, 2003, Morneau executed a note secured by a mortgage in favor of Chase on the property. The mortgage was recorded on the land records on September 4, 2003. Before the mortgage and until June, 2003, Moran and Morneau cohabitated at the residence on the property. Moran did not sign the note or the mortgage of the property in favor of Chase. Rather, Moran had vacated the property in June due to a deteriorating relationship with Morneau.

On July 17, 2003, Moran recorded on the Portland land records a document entitled "Notice Re: Constructive Trust 1/2 Ownership." This notice was placed on the records before the mortgage was recorded. Moran signed the trust notice in which she stated that, although Morneau owned the property in "fee simple," she had a "one-half ownership interest" in the property, which Morneau held "in constructive trust."[4] The notice was not signed by Morneau. A document called Schedule B was attached to the notice and consisted of a single page, handwritten statement signed by Morneau.[5] This document, dated April 3, 2003, stated that Moran had a "vested interest" and was an equal owner of the subject

property. It also indicated, however, that it would be "formalized [through] further written agreement," before June 3, 2003. Schedule B was not signed by any witnesses and there was no acknowledgement by a notary public or other authorized official of Morneau's signature. No further agreement between Moran and Morneau was filed on the land records.

Chase filed a complaint dated August 9, 2007, seeking to foreclose the mortgage on the property. In its complaint, Chase named Moran as a creditor with possible priority due to the notice of constructive trust. J.P. Morgan, as successor to Chase, subsequently filed a motion for summary judgment as to liability only. Moran did not oppose the motion, and the trial court, *Aurigemma, J.*, rendered summary judgment in favor of J.P. Morgan on September 10, 2012. Moran then filed a motion to reargue, which was granted. After reargument, Judge Aurigemma reaffirmed her initial ruling in favor of J.P. Morgan. Subsequently, the trial court, *Domnarski, J.*, rendered a judgment of strict foreclosure in favor of J.P. Morgan. This appeal followed.

We begin by reiterating the applicable standard of review. "The standards governing our review of a trial court's motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Robinson* v. *Cianfarani*, 314 Conn. 521, 524–25,  A.3d (2014).

"The principles governing the construction of instruments of conveyance are well established. In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . .

In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances." (Internal quotation marks omitted.) *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 780, 687 A.2d 1270 (1997). "On appeal the scope of review of such a question is plenary and does not require the customary deference to the trial court's factual inferences." (Internal quotation marks omitted.) *Carbone* v. *Vigliotti*, 222 Conn. 216, 222, 610 A.2d 565 (1992).[6]

Moran claims that there is a genuine issue of material fact as to whether Schedule B conveyed a one-half interest in the title to the property to her. After a careful examination of Schedule B, we conclude that, as a matter of law, it cannot reasonably be read to operate as a valid conveyance.

Schedule B states that Moran has a "vested interest and is an equal owner" of the property. It does not declare, however, that this interest was being granted by Morneau through Schedule B itself. Rather, the document asserts the opposite. The third sentence of Schedule B clearly indicates that it shall not be considered a formal conveyance, as it states that "[t]his statement shall be *formalized* [through] further written agreement by 6-3-03, to ensure Michel Moran's rights and interests." (Emphasis added.) Although we recognize that technical terms are not necessary to effectuate a valid deed; see General Statutes § 47-36k (technical words not necessary to convey property in fee simple); the third sentence reveals the document's unambiguous purpose. Schedule B was not intended as a deed to one half of the title to the property to Moran, but rather to indicate, if anything, that such a deed would be forthcoming.[7]

"The meaning and effect of the [language in a deed] are to be determined, not by the actual intent of the parties, but by the intent *expressed* in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances." (Emphasis added; internal quotation marks omitted.) *Simone* v. *Miller*, 91 Conn. App. 98, 108, 881 A.2d 397 (2005); see also *Dent* v. *Lovejoy*, 85 Conn. App. 455, 462, 857 A.2d 952 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005). The provisions of Schedule B unequivocally indicate that it was not to be considered a formal conveyance of property, and, thus, cannot be construed as such.

Because Schedule B was not a valid conveyance, there are no issues of material fact as to whether Moran

had a valid one-half interest in the title to the property in the present case. The trial court, therefore, properly rendered summary judgment in favor of J.P. Morgan.[8]

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] Moran is now known as Michel Gonzalez. For consistency we refer to her as Moran.

[2] The original plaintiff, Chase Home Finance, LLC (Chase), named three defendants in this action: Ricky A. Morneau, who was the original owner and holder of the title to the property; Moran, who claims that she has a one-half interest in the title; and J.P. Morgan, which claimed an interest on the property due to a subsequent, unrelated mortgage. After the commencement of the foreclosure proceedings in the present case, Chase was acquired by J.P. Morgan, who is now the successor in interest to the original plaintiff. The issues in this appeal only relate to Moran's claim of interest.

[3] Moran has not specified whether she claims legal title to the property or an equitable interest in the property. Upon examination of the issues raised before this court, we conclude that Moran's "interest" in the property was a claim to one half of the legal title of the property. As our Supreme Court has recently reaffirmed, only the legal title holder to a parcel of property may mortgage that property; although the mortgagee holds legal title, the mortgagor retains the equity of redemption until the mortgage note is either paid or defaulted upon. See *JP Morgan Chase Bank*, *N.A.* v. *Winthrop Properties*, *LLC*, 312 Conn. 662, 673, 94 A.3d 622 (2014). We therefore conclude that the interest claimed by Moran is one half of the legal title, as Moran asserts that J.P. Morgan cannot foreclose upon the entire title to the property because she had not signed the mortgage deed.

[4] We note that, although named a constructive trust in the notice, neither party claims that the property was held in constructive trust. Typically, constructive trusts are imposed by an adjudicative entity because of the wrongdoing of a party. *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 113, 680 A.2d 1314 (1996). We therefore do not construe the term as having legal significance but rather as merely a description of the notice.

[5] Schedule B stated in full:

"Michel Moran has since 11-15-2000 paid [one-half] of all expenses and mortgage payments. That she has a vested interest and is an equal owner of 399 Main St., Portland, CT. This statement shall be formalized [through] further written agreement by 6-3-03, to ensure Michel Moran's rights and interests."

[6] J.P. Morgan claims that the interpretation of Schedule B by the trial court is an evidentiary ruling that must be reversed only upon an abuse of discretion. We disagree. Analyzing the validity of a deed is a question of law over which we have plenary review and we are not bound by the factual findings of the trial court. *Mulla* v. *Maguire*, 65 Conn. App. 525, 531, 783 A.2d 93, cert. denied, 258 Conn. 934, 785 A.2d 229 (2001).

[7] Moran argues that any defect within Schedule B was remedied by General Statutes § 47-36aa (a), also known as the Validating Act, which validates defective conveyances if not challenged within two years. The act corrects technical deficiencies in an otherwise valid conveyance. C.f. *Hannaford* v. *Mann*, 134 Conn. App. 265, 276 n.8, 38 A.3d 1239 (validating act inapplicable because plaintiff timely challenged deed), cert. denied, 304 Conn. 929, 42 A.3d 391 (2012); *Collard & Roe*, *P.C.* v. *Klein*, 87 Conn. App. 337, 350, 865 A.2d 500 (same), cert. denied, 274 Conn. 904, 876 A.2d 13 (2005). Although the act would serve to remedy many of the defects in Schedule B, including the lack of witnesses, detailed description of the property, and transactional language, it does not operate to create a valid conveyance when, as in this case, the plain language of the document indicates that it is not a conveyance at all.

[8] J.P. Morgan also raised a claim of res judicata arising out of a proceeding in a related case. Because we have concluded, however, that Schedule B was not a valid conveyance to Moran, we need not address this claim.